UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>v.<br><br>**James Matthew Horning,**<br><br>Defendant. | **Case No. 21-cr-275 (ABJ)** |

### MOTION FOR EARLY TERMINATION OF SUPERVISED RELEASE

Mr. James Matthew Horning, through undersigned counsel, respectfully moves this Court, pursuant to 18 U.S.C. § 3583(e)(1), to terminate his supervised release following successful completion of nine months of his twelve month term. The Probation Office indicates that it does not oppose this request, and has informed counsel that Mr. Horning has been perfectly compliant during the last nine months. The government indicates it will oppose early termination, but for the reasons discussed below, termination of Mr. Horning's supervised release is warranted by his good conduct and in the interests of justice. Termination is also warranted in light of the Probation Office's non-opposition to this request, as his probation officer is the party that can speak to Mr. Horning's conduct best after supervising him for the past nine months.

### RELEVANT BACKGROUND

On October 6, 2022, Mr. Horning pleaded guilty to one count of the misdemeanor offense entering and remaining in a restricted building or grounds, in violation of 18 U.S.C. 1752(a)(1). *See* Plea Ag't, ECF No. 36. In February of 2023, this Court sentenced Mr. Horning to 30 days of incarceration followed by twelve months of supervised release. *See* Judgment (Feb.

21, 2023), ECF No. 50. Mr. Horning began serving his twelve months of supervised release on June 23, 2023 after he was released from his term of incarceration. To this date, Mr. Horning has completed his special conditions of supervised release and has no further court ordered obligations.

## LEGAL STANDARD

"[A]fter considering the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7)," the Court may "terminate a term of supervised release and discharge the defendant at any time after the expiration of one year of supervised release . . . if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice." 18 U.S.C. § 3583(e)(1).

The specified § 3553(a) factors to consider include: the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed to afford adequate deterrence, to protect the public from the defendant, and to provide the defendant with needed educational or vocational training; the Sentencing Guidelines; the need to avoid unwarranted sentencing disparities; and the need to provide restitution to any victims. 18 U.S.C. § 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), (a)(7). The Court need *not* consider: the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; or the kinds of sentences available. *Id.* § 3553(a)(2)(A), (a)(3).

## ARGUMENT

Early termination of Mr. Horning's supervised release is warranted by his conduct and the interests of justice.

*First*, the relevant § 3553(a) factors support early termination of Mr. Horning's supervised release. After being sentenced, Mr. Horning took seriously the terms of his probation and worked diligently to complete all 60 hours of his court ordered community service as well as payment of the $500 Restitution required by his plea agreement and ordered by the Court. According to his probation officer, Mr. Horning is in good standing with the Probation Office, has maintained a stable residence, reports as directed, has no outstanding fines or fees, has passed every drug test, has completed mental health treatment, and completed his community service. Furthermore, his officer has confirmed he has not had any issues with noncompliance.

Mr. Horning continues to reside in Ohio with his family. He has been supervised by the United States Probation Office in the Southern District of Ohio. Upon Mr. Horning's release from prison, he has continued working for himself in his consulting construction business to provide for his family. Mr. Horning is considering taking a job in another state, but cannot do so while abiding by the conditions of his supervised release or without a transfer to a different probation office.

*Second*, there is no indication that Mr. Horning will re-offend. Ever since the instant offense, he has been compliant with all conditions of supervised release and has not engaged in similar behavior. The offense conduct was outside of his character and his time on supervision has proven that to be true.

*Third*, early termination is in the interests of justice. With nine months complete in perfect compliance, Mr. Horning has shown that he does not pose a risk of safety to the community. His compliance and absence of recidivism matches with the recent data obtained from the United States Sentencing Commission that indicated that individuals in criminal history

category one had the lowest rearrest rates by a significant degree when compared to offenders who had criminal histories.[1]

In fact, studies show that terminating an offender's supervised release early does not compromise community safety, and it saves a significant amount of judicial resources.  Laura M. Baber & James L. Johnson, *Early Termination of Supervision: No Compromise to Community Safety*, Fed. Prob. 17, 21 (Sept. 2013) ("[T]he attributable cost avoidance [of early termination] is significant.")[2]; *see also* U.S. Courts, *Early Termination of Supervision Cost-Effective & Safe*, U.S. Courts (Sept. 24, 2013) (explaining that early termination saves time, money, and resources).[3]  In 2013, a report by the AO concluded "that offenders granted early termination under the current policies pose no greater danger to the community than offenders who serve a full term of supervision."  Baber & Johnson at 20.  By contrast, the study found that offenders who completed full supervision terms were rearrested more frequently and sooner after termination than their early-terminated counterparts were.  *Id*. at 21.  The report explained that people released early from supervision have a rearrest rate after their discharge from supervision that is half the rearrest rate of people who complete their full term of supervision.  *Id.* at 20 ("Nearly twice as many full-term offenders were rearrested for major or minor offenses within three years as their counterparts who were terminated early . . . .").  In addition, it concluded that even "high-risk offenders"—which Mr. Horning is not—"who were granted early termination were much less likely to be rearrested than their full-term high-risk counterparts." *Id*. at 19.

Accordingly, the AO's Judicial Conference Committee on Criminal Law encourages courts and probation officers to consider early termination of supervised release in cases just like

---

[1] See United States Sentencing Commission, Recidivism of Federal Offenders Released in 2010, September 20, 2021, available at https://www.ussc.gov/research/research-reports/recidivism-federal-offenders-released-2010.
[2]  Available at https://www.uscourts.gov/sites/default/files/77_2_2_0.pdf.
[3]  Available at https://www.uscourts.gov/news/2013/09/24/early-termination-supervision-cost-effective-and-safe.

this one: where "the conditions of supervision have been met, and the offender has successfully reintegrated into the community and does not pose a foreseeable risk to public safety in general or to any individual third-party." John M. Hughes, *Mem. to All Chief Probation Officers on New Criteria for Accessing Early Termination of Supervision* (Oct. 30, 2002); *see also* Baber & Johnson at 17 (explaining Judicial Conference policies "encourage[] probation officers to seek early termination as soon as offenders [are] statutorily eligible if the offender ha[s] satisfied the conditions of supervision, ha[s] successfully reintegrated into the community, and d[oes] not pose a foreseeable risk to public safety generally or to any individual third party"). As discussed above and reflected in the Probation Office's non-opposition to early termination, Mr. Horning meets these criteria.

Courts should "align [their] resources effectively to address those cases that are more complex and pose the greatest risks to community safety, while reducing expenditures in less complex and lower risk cases when it is prudent to do so." Hon. Robert Holmes Bell, *Mem. on Cost-Containment Strategies Related to Probation and Pretrial Services Offices* (Feb. 16, 2012). Time and money spent supervising Mr. Horning should instead go towards providing reentry support to those with greater needs. Mr. Horning has shown that he does not require any further supervised release to reintegrate successfully into the community.

*Lastly*, Mr. Horning was on pre-trial supervision for 27 months prior to being sentenced and has served an additional nine months of supervision while on supervised. His total 36 months' supervision has restricted his liberty. He has accepted responsibility for his crime and served his sentence perfectly. There is no longer any need for any further restrictions of Mr. Horning's liberty.

## CONCLUSION

For the foregoing reasons, Mr. Horning respectfully requests that this Court grant this motion, terminate his term of supervised release, and discharge him.

Respectfully submitted,

A.J. KRAMER
FEDERAL PUBLIC DEFENDER

_____/s/_____
Maria Jacob
Assistant Federal Public Defender
625 Indiana Ave. NW, Ste. 550
Washington, D.C. 20004
(202) 208-7500